## STALLINGS *vs.* HARROLD, JOHNSON & COMPANY.

1. The factor's crop lien under section 1978 of the Code, though not created when the advances were made or the supplies furnished, nor until the middle of November, by which time the crops of the year had matured, was, nevertheless, operative as a lien upon the crops of that year, and took precedence of a general judgment rendered in March.

2. But a delivery of crop to the factor in December, to be applied in part payment of the lien, did not vest title as against the general judgment. A levy of such judgment, made after delivery and while the crop was in the factor's warehouse, could not be defeated by a mere claim at law, interposed by the factor. The priority of the crop lien over the older judgment could have been asserted by foreclosure and claiming the proceeds of sale.

Claim. Factor's lien. Judgments. Before Judge CRISP. Webster Superior Court. September Term, 1877.

Stallings obtained judgment against Jowers on March 13, 1873, and had *fi. fa.* issued thereon levied on five bales of cotton on the 26th day of December, 1873.

This cotton was made by Jowers on his plantation during said year, and was delivered by him to Harrold, Johnson & Co., on said day, and levied on immediately after said delivery. Harrold, Johnson & Co. interposed claim. The cotton was delivered to the claimants by Jowers as a part payment of a certain written obligation, with lien on the crops of all kinds to be raised the then (present)

year—the same purporting to be for advances for supplies to enable him, the said Jowers, to raise his crops for said year. This draft was dated the 13th November, 1873, and due one day after date thereof.

The cotton being made during said year, the claimants insisted that the delivery of the same on said draft passed title to the claimants. It appeared that the cotton was fully matured, if not gathered, before the obligation was given, and the plaintiff contended that under such circumstances no lien was created in favor of the claimants, and that if it was so created, claimants could not assert their lien by claim, etc.

The court charged the jury, that if claimants had a lien under the act of 1866, they need not proceed at law to enforce the same; that if defendant delivered the cotton on that lien, the claimants got a good title as against the lien of plaintiff's judgment, and that such title could be asserted by claim; that if the defendant gave the lien for supplies to make the crop of that year, and the cotton was of the crop of said year, and the defendant *bona fide* paid the cotton on the lien, then claimants obtained a good title, etc.

The court refused to charge as follows: " If the jury believe from the evidence, that at the time Jowers executed the lien obligation set up by claimants, the crop of the defendant had already been made, then no lien on the cotton was created."

The jury returned a verdict for claimants. The plaintiff moved for a new trial on the following grounds:

1. Because the court erred in refusing to charge as requested by plaintiff.

2. Because the court erred in the charge as given.

3. Because the verdict was contrary to law and evidence, the charge of the court, and without sufficient evidence to support it.

The motion was overruled and plaintiff excepted.

GUERRY & SON, for plaintiff in error.

HAWKINS & HAWKINS; SIMMONS & SIMMONS, for defendants.

BLECKLEY, Judge.

1. There is no clear indication in section 1978 of the Code, that the liens there provided for are to be created before the crops mature, and not afterwards. Neither does it appear that the liens must be created at or before the time of furnishing the supplies or making the advances. The language of the section is, that the persons enumerated "shall have the right to secure themselves from the crops of the year in which such things are done or furnished, upon such terms as may be agreed upon by the parties," etc. The crops of the year, whether planted or to be planted, whether mature or immature. Persons furnishing supplies, money, farming utensils, or other articles of necessity to make crops, "shall have a right to secure themselves from the crops of the year." *When* they shall take the security is not stated. The time is left to their own choice. The crops are a fund for their security—a fund set apart by law, and the parties may fasten upon it by a formal lien when they think proper. The crops come into existence under a law which renders them subject to be bound, at any time, for the payment of a certain class of debts. If, in the mean time, a judgment lien attaches upon them, it attaches with the qualification made by the law itself; which qualification is, that a higher and better lien may at any time be created in favor of those whose money or supplies aided in production, etc. There is not the least inconsistency in giving a judgment a lien so long as a better lien is not established, and in allowing the better lien to be established even by contract. So that the law is not retroactive, passing back upon judgments which were rendered before it was enacted, the lien of a judgment may be just what the legislature pleases to make it. It may exist during to-day, and go quite out of existence to-morrow.

2. But the law providing for a crop lien, is strictly a lien law, and not a law for alienation. It will allow an older judgment lien to be postponed in favor of the crop lien, but it has not undertaken to enable the owner of the crop to sell it free from the judgment lien, though the sale be made to the holder of the crop lien, and in satisfaction of the debt thereby secured. Not only is the crop lien to be created in the manner prescribed by the Code, but the manner of enforcing it is prescribed with equal particularity, (section 1991), and must be observed. One of the requisites is, that foreclosure must take place within one year after the debt becomes due. A failure to proceed within that time is attended, generally, with loss of the lien. The law does not enable the parties to dispense with foreclosure, and settle up in their own way. They cannot put themselves in the place of the public officer, and work a change of title by mere private contract, so as to cast off other liens. The law intends the property to be legally administered, and the proceeds paid out according to due priority. It designs that all persons shall have the assurance afforded by regular, public administration. Perhaps, if thus dealt with, the property would yield more than enough to discharge the highest lien. There might be a surplus to be taken by the next lien in order. Whatever the proceeds of a public, judicial sale, whether more or less than the real value of the property, that much the holders of inferior incumbrances are entitled to have accounted for. They are entitled to have sale made under regular process, and may use their own incumbrances as a basis of proceedings, if the holder of the higher incumbrance does not move forward. If they cannot take the fruits of sale, they can at least cause a sale to occur. The judgment creditor, in the present case, was using this privilege. At the time of the levy, the factors who had the special crop lien, were in possesssion, the crop having been delivered to them to be applied in part payment of said special lien. They interposed a claim. They had a lien

superior to the judgment, but that lien was not title, and did not lift the title which they acquired by mere private contract up to its own level. The title stood below, not above the judgment. The possession would not aid the special lien ; and looking at the possession as the basis of a new lien—an ordinary factor's lien, it was inferior to the judgment. So the Code (section 1987) ranks it ; and so it ranked prior to the adoption of the Code—5 *Ga.*, 153. Where possession is requisite to the existence of a lien, as is the case with the ordinary factor's lien, and the lien is superior (that is, anterior) to the lien of the attacking judgment, the possession may be supported by a claim—30 *Ga.*, 450. But the special crop lien does not rest on possession, and derives no aid from it. It is a kind of lien that is to be asserted by sale under legal process, and not by mere detention or retention of the property. The high rank of the lien furnishes no reason why the property should not be sold under any legal process that moves against it for that purpose. Lien elevates judicial sale to its own rank, or even higher, but cannot hoist a private sale one jot. And, generally, private sale is no obstacle to a judicial sale under a subsisting lien.

Judgment reversed.