Burke *et al.*, *vs.* Anderson.

1. In the exercise of its jurisdiction to correct mistakes, equity will grant relief between the original parties and their privies in estate or in law, except as against *bona fide* purchasers without notice, and a judgment creditor does not, for this purpose, occupy the position of such a purchaser.
2. Sections 1947 and 1948 of our Code regulating the rights of liens existing by operation of law against unrecorded or defectively récorded mortgages, does not change the rule in equity as to the mistakes in the instruments themselves.   Such mistakes are still relievable except as against *bona fide* purchasers without notice.
3. The judgment of a Chancellor below refusing to dissolve an injunction will not be disturbed by this Court, except in a clear case of manifest injustice.

Equity pleading.   Mistake.   Before Judge ALEXANDER. Pulaski Superior Court.   October term, 1869.

Simon Merritt has lived very many years on a certain plantation in said county, one undivided half of which was owned by him and the other half by his son-in-law, Ruel W. Anderson.   On the 2d of January, 1868, in consideration that Frisbee & Roberts, of New York, had advanced to Merritt $5000 00 to enable him to carry on his farming operations during 1868, Merritt gave them his note therefor, and as security for such advance, in the same paper, a lien upon the crop to be raised on said plantation in 1868, and a mortgage on land described therein as follows: "My said half plantation consisting of one thousand acres lying in the fourth district and county of Pulaski in said State."   This paper was duly recorded.   In October, 1868, Ruel W. An-

derson told Robert S. Anderson, who was his father, that Frisbee & Roberts were willing to take $4000 00 for said claim and advised Robert S. to buy it. They went to Hawkinsville where Roberts was, and found him willing to take the $4000 00 for the claim, but in too great, haste to stop, as his train had arrived. Roberts, however, produced the note and mortgage. Robert S. Anderson saw only the back of the mortgage and agreed that his son, Ruel W., should go with Roberts to Macon, and, if he could get a good transfer, should there pay Roberts the $4000 00 and take the transfer. His son went, read over the mortgage carefully, and believing the description was all right, paid the $4000 00 and took the transfer.

Afterwards the undivided half of the plantation occupied by said Merritt and said Ruel W. was levied on by a common law *fi. fa.*, and the levy decribed it as being in the twelfth district of said county.

Knowing Merritt so long as a good business man and a person of integrity, and having been told by said Ruel W., even before he bought said mortgage, etc., that Merritt had mortgaged his half of their plantation to Frisbee & Roberts, and knowing that Merritt owned no other land in said county, Robert S. Anderson took it for granted that the plantation was correctly described in said mortgage. And on the day of sale under said *fi. fa.* his attorney gave public notice that the land levied on was subject to said mortgage, etc., and that said mortgage, etc., belonged to said Robert S. Anderson. Burke began bidding for it, and then the attorney went to him and told him personally that the land being sold was subject to said mortgage, etc., and showed him the paper. Burke replied that it was but a crop lien and continued to bid. But others would not bid, and so said one-half of said plantation was knocked off to Burke at $500 00, when it was worth from $3,500 00 to $4,000 00. The number of the district was not then noticed, but afterwards Robert S. Anderson found that the plantation was in the twelfth district, and that the mortgage described it as in the fourth district.

Burke *et al.. vs.* Anderson.

The sheriff having not yet made Burke a deed, Robert S. Anderson filed his bill, stating that Merritt was then in Montana Territory, and Frisbee & Roberts were in New York, but that he verily believed that Merritt, who drew the instrument, and Frisbee & Roberts believed said mortgage, etc., did cover Merritt's land, and intended it should, and that putting fourth district instead of twelfth district, was a mistake by Merritt. Though Burke had no deed to the land, he had petitioned for a partition of it by the Court then sitting. With these averments in his bill and amended bill against Merritt, Burke and the sheriff and his deputy, he prayed injunction against Burke's taking a deed to said land, that said sheriff's sale be set aside and that said instrument be reformed so as to put "twelfth" in lieu of "fourth" before the word "district." The date of the judgment, etc., do not appear. The Court granted the injunction.

Defendants' solicitors moved to dissolve the injunction and dismiss the bill because the injunction was improvidently granted ; because there was no equity in the bill ; because the plaintiff in said *fi. fa.* is not a party to the bill ; because the *fi. fa.* and date of the judgement are not averred ; because no such mistake as will affect Burke is distinctly charged, nor is there any charge of notice to Burke of such mistake when he bought ; because neither said pretended crop lien nor said pretended mortgage is valid as a crop lien or as a mortgage.

The Chancellor overruled the demurrer and that is assigned as error.

Hansell & Hansell, S. Hall, C. C. Kibbee, plaintiffs in error, cited Ligon, adm'r., *vs.* Rogers, 12th Ga. R., 281 ; Wall *et al., vs.* Arrington, 13th Ga. R., 88 ; Shepherd, adm'r., *vs.* Burkhalter, Ib., 443 ; Irwin's Code, secs. 3062, 3070, 3071 ; as to the mistake: Wyche *vs.* Green, 32 Ga. R ; the instrument is only a factors lien and not a mortgage, Code, secs. 1977, 1968, 1969.

Lanier & Anderson, Pate & Ryan, for defendant, says the mistake was properly charged : Irwin's Code, sec. 3062 ;

1st Story's Eq. Jur., sec. 162; it was a mutual mistake, 26th Ga. R., 415; mistakes will be corrected as against judgment creditors after the execution of the instrument ,without regard to notice, 13th Ga. R., 88; Irwin's Code, sec. 3064; 17th Ala. R., 557; 18th Ala. R., 682; 33d Maine R., 222; 3d S. & M., 67.

McCAY, J.

1. Where there is *in fact* a sale or mortgage of property, by one man to another, and, by a mistake in the execution of the conveyance, the true intention or contract of the parties, is not expressed, it is a common and very ancient jurisdiction of Courts of Equity to correct the mistake, to cause the instrument to speak the facts, and to put the parties, as to each other, in the true position in which they thought they had placed themselves. Nor is this relief confined to the original parties, but will be extended, both for and against their privies, in estate and in law: 1 Ves., 314; 8 Wheat, 211; Hayne's Outlines of Equity, 132 and 133; 1 Ves., 514; 3 Atk., 188; Rev. Code, sec. 3050. This is the general rule, but the Court will not, to cure one wrong, do another, and if the right of a *bona fide* purchaser, without notice, will be interfered with by the correction of the mistake, the relief will not be granted: Robert's Equity, 73; 1 Story on E., sec. 108; Rev. Code, sec. 3064.

A *bona fide* purchaser, without notice, is the only exception to the rule. It extends to the parties and all privies, in estate and in law, with that single exception: Irwin's Rev. Code, sec. 3064.

A judgment creditor is undoubtedly a privy. His only right to any interference, turns in his connection with one of the parties. He claims under him, and as a general rule has only such rights as belong to the debtor. His lien is on the property of the debtor, such property as really belongs to him, and not to such as he only seems to have. *He* can pursue his rights, in spite of mere nominal titles in other parties. *He* can go beneath the surface and subject to his debt, in

equity, even the equitable rights of his debtor.    But he may also be met by equities of other persons.    For whilst it is the policy of the law to subject fully the assets of a debtor to the discharge of his debts, it is not the policy of the law to do this with property that only nominally belongs to him, its real equitable ownership resting in others.

A *bona fide* purchaser is protected, because his *purchase* is upon the faith of the apparent rights of the seller.    He has acted, paid out his money, upon the *apparent* facts of the case, as the parties have allowed them to exist.    It is *their fault* if the papers do not speak the truth, and it is unjust that their mistake should be cured to his injury, who has been *misled* by their failure to attend carefully to their own business. · A judgment creditor does not stand in this position. *His lien* does not exist by *contract.*    He did not advance his money *to get his lien.*    That is an incident attached by law to his *judgment.    By the contract he acquired no lien.*    It cannot, therefore, be said that the right he now sets up is the right of a *purchaser* of property acquired in good faith, in ignorance of this mistake, for a consideration which he would not have advanced had the mistake never occurred.    It may, it is true, be said that perhaps he would not have given the credit had the true state of the case been put in the mortgage.    That may be *true,* but he got no lien at all by his original contract, and the setting up of the rights of the mortgagee, does not take away any *right* which this creditor acquired by his contract.    His *right* in this specific property comes from his judgment, the *law* gives it to him, to-wit: a lien on the property of the defendant.    Not, as we have said, upon property to which the defendant has simply the legal title; his lien is good, as a general rule, upon property to which the defendant has a clear equitable title, and it *does not* extend to property, when the equitable title is in a third person, though the legal title may be in the defendant.

In other words, the law subjects to a judgment all property that is really the property of the debtor, but if the equitable title be in a third person, the general rule is that the creditor cannot follow it, even though the legal title be

in the debtor, unless there be some *specific right* acquired in the property, by the creditor, *under his contract*, made in ignorance of the equitable right of the third person. In such a case he stands upon the footing of a purchaser, and has the rights of one.

But a judgment creditor is not a purchaser of *his lien*. He did not get it by his contract. He did not *advance* his money to get it. He got, by the contract, no interest in the property: 1 Story on Equity, section 410, note. See, also, 1 Story on Equity, section 416; Brace vs. Duchess of Marlborough; 2d Peere Williams 491; Anon. 2d Ves. Jr., 662. His lien depends upon and dates from his judgment, and that gives him, not any specific right in any specific property, but a general lien on.all property, *in fact* belonging to the defendant.

2. It is contended, however, that our Code, section 1947, which requires mortgages to be recorded in a specified time and manner, and which declares that the lien of mortgages not so recorded, or recorded improperly, shall yield to liens created by operation of law, or to *bona fide* purchasers, without notice, is inconsistent with the rule thus laid down, and being a statutory regulation, repeals it. It will be noticed that this is not a general rule applicable to all equities which may exist, in opposition to the apparent rights as they appear upon the record. Ordinary equities, existing in third parties, are not by this Act provided for. Nor will it be contended that as a general rule, liens of judgments are good against all equities. This Act provides for the single case of an unrecorded, or defectively recorded, mortgage. In such cases, it is provided that a lien, cast by operation of law, shall be preferred to the mortgage, even though the creditor had notice. This is perhaps the effect of the statute.

The law makes it the duty of a mortgagee to record his mortgage, and if he fails, it puts the penalty upon him that, as to such liens as are cast upon the property by operation of law, he shall be postponed. If the mortgagee has failed to record, it is a piece of gross negligence, which he ought to suffer for. If the record is defective, if the Clerk is at fault,

Burke *et al.*, *vs.* Anderson.

the mortgagee has his remedy against him.   At any rate it is the positive provision of the statute, that a failure to record or a defective record, is not good against a judgment.   Notice has nothing to do with it, since the judgment was not taken because there was no notice.   It is simply a regulation of law, providing for the priority of one lien over another, under certain prescribed and definite circumstances.   But it extends only to the case mentioned in the statute, to-wit : the case of an unrecorded or defectively recorded, mortgage.   It does not extend to equitable rights generally.   They still stand upon the footing that they are good against the parties and their privies, except only in the case of a *bona fide* purchaser, without notice.

We are not prepared, therefore, to extend this provision of the Code further than its terms require, to-wit : when the parties have failed to have their mortgage recorded, as the statute requires, a judgment, obtained before the recording, shall have priority.

Other equitable rights which one party has in the property of another, stand, as to judgments, on the same footing as they did at common law.   The rights to have a plain mistake corrected, is a well settled right, and it extends by express words of the Code to parties and privies, and to this there is no exception, save the case of a *bona fide* purchaser, without notice, that is one who without notice of the equity, acquires a *right in the property*, by the advance of his consideration.

3. The judgment of a Chancellor below, refusing to dissolve an injunction, will not be disturbed by this Court, except in a clear case of manifest injustice.

Judgment affirmed.