IVERSON, administrator, *vs.* WILBURN, administratrix.

The power to relieve against a mistake in equity must be exercised with caution, and to justify it the evidence must be clear, unequivocal, and decisive as to the mistake. It must arise from ignorance, surprise, imposition or misplaced confidence, and be unmixed with negligence. The present case does not present such a mistake as to require equitable relief.

Equity. Contracts. Before Judge SPEER. Bibb Superior Court. October Term, 1879.

Iverson, administrator of Iverson, deceased, filed his bill against Mrs. Wilburn, administratrix of Wilburn, deceased, alleging, in brief, as follows: On October 14th, 1869, Iverson and Wilburn, both being then in life, entered into a written agreement. It recited that the former had that day purchased of the latter a certain tract of land, described by boundaries, "the said land to be surveyed at the expense of said Wilburn, and the number of acres ascertained, and for which the said Iverson is to give the said Wilburn thirty dollars per acre, one-half to

be paid next Christmas, and the balance twelve months from that time; the notes and other evidences of said sale to be drawn up in form and delivered as soon as the said survey is made." Shortly afterwards Wilburn had a survey made, and reported to Iverson that there were 122 1-5 acres, for which he wished notes. Both parties believed this survey to be correct, and there was nothing to put Iverson upon inquiry, or cause him to suspect any mistake. The notes were accordingly executed for the amount due for 122 1-5 acres, to-wit: $3,666.00. During his life Iverson paid $1,452.00 on the purchase money, and after his death complainant paid $400.00. Before he died defendant sued him for the balance of the purchase money due. He had a good defense, as has subsequently appeared, but was not aware of it then, and judgment went against him for the balance due. When complainant administered on the estate of Iverson, he found a balance of $1,968 due on the *fi. fa.*, and being wholly ignorant of any defense thereto, he paid it off and extinguished it, or allowed it to be done. One B. V. Iverson bought some of the property subject to the *fi. fa.*, (it is first alleged at sheriff's, then at administrator's sale), and borrowed the money to pay therefor from one Strohecker. It was agreed that Strohecker should take a transfer of the *fi. fa.* from the plaintiff therein to secure him, which was accordingly made; subsequently, B. V. Iverson repaid the money, and Strohecker transferred the *fi. fa.* to him. Iverson, Jr., being both administrator and interested in the estate of his father, Iverson, Sr., and desiring to buy the land, agreed to pay the balance of the purchase money and take a deed to it individually; this trade was consummated, the *fi. fa.* extinguished by the payment of the money, and he individually receipted to himself as administrator for the amount so paid. He has settled with the estate. Thus matters stood until a few months before the bringing of this bill (1877) when complainant desired to sell a part of the land, and upon having

a new survey made, it was discovered that the former survey was erroneous, and instead of containing 122 1-5 acres, the land only contained 105, thus making a difference of $516.00, which was improperly paid. This bill is brought within a few months of making this discovery, and within four years from the last payment on the purchase money.

The prayer was to set aside the judgment for purchase money to the extent of the mistake, and that defendant be required to reimburse complainant to the amount of the overpayment.

Exhibited to the bill were the written contract in regard to the survey, the suit by defendant against Iverson, Sr., for the balance of purchase money, a confession of judgment thereon, "with stay of execution until November 1st, 1872," made on January 22d, 1872, the *fi. fa.* founded upon such judgment, with transfers of it, and an administrator's deed from complainant to B. V. Iverson.

Defendant demurred to the bill for want of equity, be'cause the mistake complained of was not such as to be relievable by equity, being unmixed with fraud by defendant or her intestate, but being mixed with *laches* on the part of complainant and his intestate, and because it appeared on the face of the record that the action was barred by lapse of time.

The demurrer was sustained, and complainant excepted.

JOHN RUTHERFORD, for plaintiff in error, cited 1 Ch. Pl., 350-1 ; 23 *Ga.*, 477; 28 *Ib.*, 272, 287; Code, §§3118, 3174, 3595, 2642, 3117; 7 *Ga.*, 383 ; 13 *Ib.*, 88 ; 40 *Ib.*, 535 ; 3 P. Wm., 126; 29 *Ga.*, 651, 673-4; 23 *Ib.*, 352; 41 *Ib.*, 171 ; 11 *Ib.*, 172 ; 1 Story's Eq., 162 ; acts 1859, pamp. 237.

BACON & RUTHERFORD, for defendant, cited 13 Pet., 268; Code, §§3129, 3178, 3577, 3826, 3828, 4220, 3588, 2919, 2924; 15 *Ga.*, 103.

JACKSON, Justice.

This bill was filed by Alfred Iverson, as administrator of Alfred Iverson, Senior, against Mrs. Wilburn, the administratrix of Wilburn, deceased, for the purpose of setting aside a judgment confessed by Iverson, Senior, in his lifetime to said administratrix in June, 1872. The bill was filed in March, 1877. The ground on which it proceeds is that the judgment is founded on a land trade, in which Iverson, Senior, agreed to pay Wilburn, deceased, for a certain piece of land, bought in 1849, to be surveyed at the expense of Wilburn, at the rate of thirty dollars an acre, that there was a mistake in the survey by which the judgment was for too much, that it had all been paid, and the prayer is that the overplus be paid back to Iverson, as administrator. Both parties to the contract are dead. It is in writing. The survey was to be made to carry it out. No fraud is alleged against Wilburn, deceased. He handed the survey when made to Iverson. His offense hath this extent; no more. No reason is given why Iverson did not look into it at the time and see to it that it was right. While Wilburn was to pay for it, Iverson had rights equal to Wilburn to see to the survey and that it be done correctly. It seems to have been an innocent mistake of the surveyor, with no fault in Wilburn and no fraud on his part, and this mistake was not "*unmixed with negligence*" in Iverson. Code, §3129.

The power to relieve against any mistake in equity is very limited by our Code. It must be "exercised with caution, and to justify it the evidence must be clear, unequivocal and decisive as to the mistake;" "it must arise from ignorance, surprise, imposition or misplaced confidence." Code, §3117. To relieve against a judgment, the rule is still more stringent. This judgment too was confessed, and by the party to the contract in his lifetime, and on consideration of a stay of execution. The administrator of Iverson has settled with the estate, and that

estate is not interested but himself individually. The *fi. fa.* has been transferred, and other equities have intervened.

The contract was made in 1869, the judgment was confessed in 1872, payments were made on the contract before and after judgment by Iverson, Senior, in life, and by the administrator, to those who had bought the *fi. fa.* after administration. There seems to have been *laches*, negligence, all the way through. And in such cases equity will not grant relief—especially against a judgment, and that confessed for a consideration, to wit: a stay of the execution. 13 Peters, 268; 15 *Ga.*, 103.

On the whole, we are clear that there is no error in sustaining the demurrer and dismissing the bill.

Judgment affirmed.