## FARKAS *v.* THIRD NATIONAL BANK OF ALBANY.

Where a mortgagor, on maturity of his debt, pays to the mortgagee a certain sum of money on the debt and' executes a new note for the balance, which he secures by hypothecating warehouseman's receipts for nine bales of cotton, being the same cotton covered by the mortgage, and the mortgagee enters upon the note and mortgage the word "satisfied," and surrenders them to the mortgagee, and the mortgage is duly canceled on the record, this amounts to an extinguishment of the mortgage, and the new security is inferior to an intervening mortgage on the same property, of which the first mortgagee had notice at the time he canceled his mortgage and accepted the new security.

Submitted July 13, 1909.—Decided January 14, 1910.

Complaint. Before Judge Spence. Dougherty superior court. October 6, 1908.

*Jesse W. Walters & Sons,* for plaintiff in error.

*Clayton Jones* and *R. J. Bacon,* contra.

Evans, P. J. On May 2, 1904, B. F. Manning, trustee, borrowed from the Third National Bank of Albany $500, for which he gave his note due November 1, 1904, with two indorsers, secured by a mortgage upon his crops of cotton. This mortgage was duly recorded. On June 15, 1904, B. F. Manning, trustee, executed a mortgage upon the same property to Sam Farkas to secure a note of $528, which was duly recorded. On November 1, 1904, Manning gave to the bank his note for $397.25, due four months after date, and deposited, as collateral security therefor, warehouseman's certificates for nine bales of cotton, which were embraced in the lien of the mortgage, and paid in money the difference between the amount named in the new note and the note secured by mortgage; whereupon the officer of the bank indorsed upon the mortgage the words: "Satisfied. Third National Bank of Albany. November 1st, 1904. N. R. Dehon, Teller," and delivered to Manning the mortgage and note. Manning then caused the entry of satisfaction to be made upon the records of the court. Afterwards Sam Farkas

foreclosed his mortgage and levied upon the cotton in the warehouse, which was the same cotton represented by the warehouseman's certificate hypothecated to secure Manning's note to the bank. The bank, Farkas, and Manning entered into an agreement that the cotton might be sold by the sheriff at private sale, and that the proceeds thereof would be held by the sheriff in lieu of the cotton. The cotton was sold under this agreement. The parties failed to agree as to the distribution of the proceeds; and upon the bank's failure to file its claim or demand with the sheriff, the latter turned over the proceeds of the sale of the cotton to the attorney of Sam Farkas, to be credited upon his mortgage fi. fa. Thereupon the bank instituted its suit against Manning, Farkas, and the sheriff to recover the proceeds. The case came on to be tried; and after hearing the evidence, from which the foregoing facts appeared, the court directed a verdict against Sam Farkas for $258.06 principal (same being the proceeds of the cotton), with interest from the time the proceeds were turned over to him by the sheriff. Farkas excepted.

If the new security which the bank accepted had been a mortgage instead of a pledge of the warehouse receipts, the case would be free from difficulty. The rule in such case has been well put by McClellan, J., in New England Mortgage Security Company *v.* Hirsch, 96 Ala. 232 (11 So. 63). Said he: "While it is the law that the mere taking of a new note and mortgage, the debt evidenced by the former and the property embraced in the latter being the same, will not discharge or displace the lien of an existing mortgage, it is equally well-settled law that where the new transaction involves the payment and satisfaction of the first mortgage, the mortgagee's rights are dominated by the intervening liens of third persons, liens acquired subsequently to the execution of the first, and prior to the execution of the second, mortgage." Jones on Chattel Mortgages, §§ 644, 645; Walters *v.* Walters, 73 Ind. 425. The authorities uniformly hold that whether the taking of the second mortgage amounts to an extinguishment of the first mortgage is one of intention between the parties. It appears from the record in the present case that the cashier of the bank demanded of the mortgagor that he pay the difference between the estimated value of the 9 bales of cotton and the amount of the mortgage, before the bank would cancel and surrender its mortgage. The mort-

gagor complied with these terms, paid the bank something over one hundred dollars, and gave his note for the balance of the debt, hypothecating the warehouse receipts as security for the new note, which was to mature four months after date. Thereupon the cashier indorsed upon the bank's mortgage an entry of satisfaction, authorizing its cancellation upon the records, delivering the mortgage and the note (the latter having two indorsers) to the mortgagor, who caused its cancellation upon the record. On the trial the cashier of the bank testified: "When this note fell due we agreed to cancel this mortgage for him [the mortgagor] by his delivering this renewal note and cotton to secure the balance due," and the mortgagor testified that he paid the original note, which was indorsed by Newsome and Fleetwood, and the mortgagee handed it and the mortgage over to him, and he caused the mortgage to be canceled on the record, and that it was his understanding that the mortgage was paid by the renewal note secured by the pledge of nine bales of cotton and a little more than a hundred dollars. From these facts there can be but one inference, and that is that the parties had a settlement, by the terms of which a new security, of a higher nature, and a certain sum of money were taken in settlement and discharge of the original mortgage, the effect of which was to discharge the prior mortgage: *Woodside* v. *Lippold*, 113 *Ga.* 877 (84 Am. St. R. 267, 38 S. E. 400) ; Smith v. Bynum, 92 N. C. 108; Hutchinson v. Swartsweller, 31 N. J. Eq. 205. We do not think that the fact that the new security accepted by the bank was a pledge of a part of the mortgaged property, instead of a mortgage, alters the case. On the contrary it would seem that the taking of a higher security would emphasize the intention of the parties that the inferior lien was to be discharged. Warehouse receipts are symbols of property, and the transfer and delivery of these receipts to the bank gave the latter constructive possession of the cotton, and also title thereto. The substitution of the warehouse receipts would seem to be utterly inconsistent with the idea of continuing the lien of the mortgage, when by the new security the mortgagee invested himself with the title to the property.

It is further contended, notwithstanding the parties canceled the mortgage, that still, under the facts of the case, the bank was equitably entitled to so much of the proceeds of the cotton as might be sufficient to pay the amount of the new note. It is argued that

if the bank had accepted the nine bales of cotton in settlement of the mortgage, while it could not have asserted title dependent on the private sale, yet it could have foreclosed its mortgage and sold the cotton thereunder and applied so much of the proceeds of such sale as was necessary to the extinguishment of the mortgage. *Stallings* v. *Harrold,* 60 *Ga.* 478; *Duncan* v. *Clark,* 96 *Ga.* 263 (22 S. E. 927) ; *Lightner* v. *Brannon,* 99 *Ga.* 606 (27 S. E. 703). And the deduction from this principle is sought to be drawn, that if the bank, in the case of an absolute purchase of the cotton in satisfaction of its mortgage, would be equitably remitted to its rights under the mortgage, the taking of the cotton in pledge as security for a renewal by note of a part of the original debt secured by the mortgage would not change the fundamental basis of the bank's claim of equity. The two transactions are entirely dissimilar. In the case of a private sale of the mortgaged property by the mortgagor to the mortgagee in satisfaction of the debt, the relation of debtor and creditor with respect to the property is intended to cease, and the consideration of the sale is the cancellation of both debt and mortgage. When the holder of a subordinate lien on the same property, acquired between the execution of the mortgage and the surrender of the mortgaged property to the mortgagee, undertakes to assert that lien by a levy of his process upon the mortgaged property in possession of the mortgagee, he is attacking the mortgagee's title. That is to say, the subordinate lienee by his act is proceeding to nullify the mortgagee's title simply because that title was not obtained by judicial sale; and this will not be allowed in equity when the transaction is free from fraud, and there is no estoppel except upon a restoration of the original status. But where the mortgagee releases the mortgage, and surrenders it to the mortgagor, and authorizes its cancellation on the record, and takes a new note secured by a pledge of some of the mortgaged property, the transaction is one for the continuance of the relation of debtor and creditor. The intermediate lienee does not attempt to nullify or set aside the transaction between the mortgagor and mortgagee, but on the contrary his position in claiming superiority over the first mortgage is to hold the mortgagor and mortgagee strictly to their legal status. He says to the mortgagee, you have canceled your mortgage which was superior to my lien, with a full knowledge of my lien, and you must abide the consequences. If the first mort-

gagee had accepted the pledge of the cotton and surrendered his mortgage for cancellation in ignorance of the intervening lien, equity, in the absence of laches or other disqualifying fact, would restore him to his original position. Bruse *v.* Nelson, 35 Iowa, 157. But when the first mortgagee accepted his new and higher security, cancelling and surrendering his mortgage with knowledge of the second mortgage, the lien of second mortgagee became the first lien and superior to the new security given by the mortgagor on the mortgaged property.

*Judgment reversed. All the Justices concur.*