33020. DAVIS et al. v. JOHNSON et al.

MARSHALL, Justice.

In the present case, the Gwinnett County Bank seeks to set aside its cancellation of a deed to secure debt executed by the prior owner of certain real estate. The bank also seeks to enjoin Dealers Supply Company, a judgment creditor of the erstwhile owner, from foreclosing on the property. The trial court dismissed the complaint for failure to state a claim for relief. We have determined that the complaint does state a claim for relief. We therefore reverse.

These are the facts: The Gwinnett County Bank took a promissory note and deed to secure debt from Johnson, the original owner, to secure a purchase money

indebtedness in excess of $30,000. On June 1, 1976, Johnson contracted to sell the property to Davis for a purchase price of $32,500. On September 17, 1976, Johnson conveyed the property by warranty deed to Davis, including therein a property owner's affidavit stating that the property was free of liens and encumbrances. Davis paid Johnson $2,500 in cash, and Davis executed a deed to secure debt to the bank to secure the remainder of the purchase price. This security deed provided, in part, that absolute fee simple title to the property was in Davis and that there were no other liens or encumbrances of any character against the property. Davis also signed a promissory note in favor of the bank on September 17, 1976, to mature on March 17, 1977. On December 7, 1976, the bank had Johnson's deed to secure debt canceled of record.

Unknown to either Davis or the bank, Dealers Supply had obtained a consent judgment against Johnson in the amount of $47,000; this judgment was recorded on the general execution docket of Gwinnett County on July 13, 1976.

On March 9, 1977, Dealers Supply, in execution of this judgment, levied on the real estate Johnson had conveyed to Davis. The Gwinnett County Bank filed the present action on March 30, 1977, praying that the foreclosure sale be enjoined. Davis' promissory note to the bank was in default at the time this complaint was filed. The trial judge granted the bank's request that a temporary restraining order be issued, and Dealers Supply was ordered to appear and show cause why a permanent injunction should not be granted. Following the rule nisi hearing, the trial judge granted Dealers Supply's motion to dismiss the complaint, and its motion to dissolve the temporary restraining order was also granted. *Held:*

As this case is presented to us, we view the critical and dispositive question to be whether Dealers Supply has the senior lien on the property or whether the Gwinnett County Bank may set aside its cancellation of Johnson's security deed and be reinstated to its original priority position.

The trial judge reasoned that the bank's cancellation

of Johnson's deed to secure debt operated to reconvey title to the property to Johnson under Code § 67-1306, at which time the property was subject to Dealers Supply's judgment lien. Applying the rule of Code § 67-1704 that the lien which is oldest in date shall be first in priority, the trial judge concluded that the judgment lien thus became the senior lien on the property.

The trial judge recognized the existence of the following principles, most notably exemplified by decisions of the court in *McCollum v. Lark,* 187 Ga. 292 (3, 4) (200 SE 276) (1938); *Flournoy Plumbing Co. v. Home Owners Loan Corp.,* 181 Ga. 459 (182 SE 507) (1935); *Wilkins, Neely & Jones v. Gibson,* 113 Ga. 31 (38 SE 374) (1901); and *Merchants &c. Bank v. Tillman,* 106 Ga. 55 (31 SE 794) (1898): Where one advances money to pay off an encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance, either upon the express understanding or under circumstances under which an understanding will be implied that the advance made is to be secured by the senior lien on the property, in the event the new security is for any reason not a first lien on the property, the holder of the security, if not chargeable with culpable or inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equity of others would be prejudiced thereby; knowledge of the existence of an intervening encumbrance will not alone[1] prevent the person advancing the money to pay off the senior encumbrance from claiming the right of subrogation where the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer; under the foregoing circumstances, equity will set aside a cancellation of such security and revive the same for the benefit of the party who paid it off. See also *Murray v. Johnson,* 222 Ga. 788 (152 SE2d 739) (1966); *Young v. Hirsch,* 187 Ga. 1 (199 SE 179) (1938); *Eldridge v. Forman,* 171 Ga. 367 (155 SE 476) (1930).

---

[1] If the party advancing the funds to pay off the senior encumbrance has actual, rather than constructive, knowledge of the existence of the intervening lien, this

We agree with these equitable principles concerning the doctrine of subrogation, and we believe that they may be appropriately used in determining whether a party who has canceled a security deed, and taken another security deed in replacement thereof, may set aside the cancellation and, as against an intervening lien, be reinstated to its original priority status. See Holt v. Mitchell, 96 Colo. 412 (43 P2d 388, 98 ALR 838) (1935); 55 AmJur2d 469-473, 496-501, Mortgages, §§ 450-457, 500-509.

Although it may seem somewhat anomalous to allow someone to be subrogated to his own rights, we believe that the use of the subrogation doctrine under the circumstances of this case is entirely justified. As was stated in *Cornelia Bank v. First Nat. Bank of Quitman,* 170 Ga. 747, 750 (154 SE 234) (1930), "Subrogation . . . is of equitable origin and benevolence. It is founded upon the dictates of refined justice. Its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice . . . The courts incline rather to extend than restrict the principle. The doctrine has been steadily growing and expanding in importance, and becoming general in its application to various subjects and classes of persons, the principle being modified to meet the circumstances of cases as they have arisen." *Southern R. Co. v. Overnite Transportation Co.,* 223 Ga. 825, 830 (158 SE2d 387) (1967).

The trial judge refused to allow the bank to be subrogated or reinstated to its rights under Johnson's security deed because, in the trial judge's opinion, the bank's lack of diligence in failing to discover the existence of Dealers Supply's judgment lien had put Dealers Supply to the unnecessary trouble and expense of levying on the property. Under the equitable maxim that he who seeks equity must do equity, the trial judge is fully authorized to

---

would tend to indicate an intent to give priority to the intervening lien, as well as the absence of an understanding that the advance would be secured by a senior lien on the property. See *Farkas v. Third Nat. Bank of Albany,* 133 Ga. 755 (66 SE 926) (1909).

require the bank to reimburse Dealers Supply for these expenses before allowing the bank to obtain equitable relief. This is not, however, the type of change of position by the intervening lienholder that would estop the senior secured party from being reinstated to its original priority status. The senior secured party is estopped from being reinstated to its senior status where the intervening lienholder has taken or purchased the lien in reliance upon his apparent status as senior lienor. It can not be said that the judgment creditor has taken the lien of his judgment in reliance upon his status as senior lienor. A judgment creditor does not stand in the position of a bona fide purchaser for value. *Burke v. Anderson,* 40 Ga. 535 (1869). Accord, e.g., *Parker v. Boyd,* 208 Ga. 829 (1a) (69 SE2d 760) (1952); *W. L. Schautz Co., Inc. v. Duncan Hosiery Mills, Inc.,* 218 Ga. 729 (5) (130 SE2d 496) (1963). The rights of a judgment creditor are inferior to the prior equitable rights of a mortgagee. See *Burke v. Anderson,* supra. In addition, in the case at bar, at the time the judgment creditor recorded its judgment, the bank's senior security deed was still of record.

Therefore, in no legally cognizable sense will the judgment creditor be prejudiced by the bank's being restored to its rights under Johnson's deed to secure debt. The senior secured party's lack of diligence in failing to discover the existence of the intervening lien becomes material only where this has prejudiced the rights of the intervening lienholder.

The judgment is therefore reversed and the case remanded to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed and remanded. All the Justices concur, except Hall, J., who concurs in the judgment only, and Jordan and Hill, JJ., who dissent.*

ARGUED JANUARY 9, 1978 — DECIDED JUNE 28, 1978.

*Webb, Fowler & Tanner, W. Howard Fowler, J. L. Edmondson,* for appellants.

*Alston, Miller & Gaines, G. Conley Ingram, Glyndon C. Pruitt, A. Mims Wilkinson, Jr., James M. Powell, John*

*G. McCullough, William H. Willson, Jr., George A. Pindar,* for appellees.

HILL, Justice, dissenting.

A chronological statement of the facts will clarify both the facts and the errors of the majority.

On June 1, 1976, when Johnson contracted to sell the property to Davis, the Gwinnett County Bank held Johnson's 60-day promissory note and $21,000 deed to secure debt with dragnet clause. On July 13, Dealers Supply recorded its $47,000 consent judgment against Johnson on the general execution docket. On September 17, Johnson conveyed the property by warranty deed to Davis for $32,500, and Davis conveyed it by security deed to the bank to secure his $30,000 debt to the bank. On December 7, 1976, the bank had Johnson's deed to secure debt canceled of record.

Now the bank wants to set aside its cancellation of the original deed to secure debt executed by Johnson, and thereby regain its priority status as to Johnson's debt in the sum of $234,183.63.[1] The trial court granted Dealers Supply's motion to dismiss and the majority reverse.

The majority say that the rights of the judgment creditor are inferior to the prior equitable rights of the mortgagee and that this "somewhat anomalous" right of subrogation is of equitable origin. The majority fail to explain how Dealers Supply, which did nothing but record its judgment, can lose in equity to Davis and the bank who acted with constructive notice of Dealers Supply's recorded judgment. "If a party, by reasonable diligence, could have had knowledge of the truth, equity shall not relieve; . . ." Code § 37-211. Davis and the bank had constructive knowledge of Dealers Supply's recorded judgment. By checking the record (reasonable diligence) they would have had actual knowledge of it. A mistake which can be relieved in equity must be unmixed with negligence. *Iverson v. Wilburn,* 65 Ga. 103 (1880). Equity

---

[1] The majority do not make clear whether the revival of Johnson's security deed to the bank will revive that deed completely or only in the amount of Davis' debt.

should not relieve these plaintiffs as against Dealers Supply where it has done nothing except comply with the law. Code §§ 37-107, 37-112.

Moreover, the majority find that the bank is entitled to be restored to its priority. Yet the cases cited by the majority, if they were applicable here, would allow Davis to be subrogated to the rights of the bank, not backwards as the majority does. In *Cornelia Bank v. First Nat. Bank of Quitman,* 170 Ga. 747 (154 SE 234) (1930), it was the purchaser (i.e., Davis in the case at bar), not the creditor (i.e., the bank), who was entitled to subrogation.

If Davis obtains subrogation, his priority equals $30,000, the amount of Johnson's indebtedness which Davis paid to the bank. If the bank obtains reinstatement of its security deed from Johnson, it can claim priority as to his existing indebtedness — $234,183.63. That must be what the majority mean when they say it may seem somewhat anomalous to allow the bank to be subrogated to its own rights. It's so anomalous to me that I dissent.