**THE SUM OF $66,839.59 FILED IN THE REGISTRY OF THIS COURT, Plaintiff,**

v.

**UNITED STATES OF AMERICA INTERNAL REVENUE SERVICE, and The Sunshine House, Inc., Defendants.**

No. CIV.A. 1:99CV0776CC.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 17, 2000.

Alison Padgett Spencer, Daniel M. Formby, Rene Octavio Lerer, Thurbert E. Baker, Office of the State Attorney General, Atlanta, GA, for Plaintiff.

James Randolph Schulz, Office of United States Attorney, Atlanta, GA, Maggie O'Shaughnessy, phv, U.S. Department of Justice Tax Division, Washington, DC, Celeste McCollough, Chorey Taylor & Feil, Atlanta, GA, for Defendants.

## *ORDER*

COOPER, District Judge.

■ Pending before the Court are cross-motions for summary judgment filed by The Sunshine House, Inc. ("Sunshine House") [15–1] and the United States Internal Revenue Service (the "IRS") [24–1], and the IRS' Motion to Strike Paragraphs 5 and 7 of the Affidavit of George C. Calloway ("Calloway") [23–1].[1]

### I. *BACKGROUND*

This action arises from an interpleader action originally filed the Georgia Building Authority ("GBA") in the Superior Court of DeKalb County on February 24, 1999. On April 1, 1999, the Superior Court of DeKalb County ordered the sum of $66,-839.59, representing the amount due by GBA under a Rental Agreement it had with Americare Development, Inc.,[2] to be

---

1. With respect to the IRS' motion to strike, because a motion to strike is only appropriate with regard to a pleading and an affidavit is not a pleading (*see* Fed.R.Civ.P. 7), the motion to strike Calloway's affidavit is procedurally improper. Rather than filing a motion to strike as under Rule 12, the proper method for challenging the admissibility of evidence in an affidavit is to file a notice of objection to the challenged testimony. On a motion for summary judgment, the Court will evaluate the evidence presented in the affidavit and consider any objections raised to the testimony. Further, having reviewed Calloway's deposition and affidavit testimony, the Court finds that the arguments raised by the IRS go to the weight to be given to his testimony rather than its admissibility. Accordingly, the IRS' motion to strike paragraphs 5 and 7 of Calloway's affidavit [23–1] is DENIED.

2. Pursuant to the Rental Agreement between GBA and Americare Development, Inc., upon termination of the Agreement, monies were to be paid by GBA to Americare Development, Inc. for the purchase of certain assets and equipment that had been placed in a child care center owned by GBA. The Rental Agreement was terminated on July 20, 1998.

paid into the registry of that Court. On April 9, 1999, GBA paid said amount into the registry of the DeKalb County Superior Court. After a Notice of Removal pursuant to 28 U.S.C. § 1444 was filed by the IRS, the action was removed to this Court. This Court then ordered that the interpleaded funds held in the DeKalb County Superior Court registry be transferred to the Clerk of this Court. Both the Sunshine House and the IRS have now moved for summary judgment with respect to their purported entitlement to the funds being held in this Court.[3]

Defendant Sunshine House operates several child care centers in Georgia, South Carolina, and North Carolina. On September 30, 1998, Carolina Child Care and Sunshine House (collectively referred to herein as the "Purchasers") purchased the assets of Americare Child Enrichment Centers, Inc. and the Americare Trust (collectively referred to herein as "Americare") for the total sum of $2,365,166.00. As part of this asset purchase, Purchasers purchased and received an assignment of the $66,839.59 at issue in this case.

Also as part of the asset purchase price, Purchasers paid off a loan from The First National Bank of Griffin ("First National") to Americare in the amount of $1,421,-307.00. The loan that had been given by First National to Americare was secured by, among other things, two UCC–1 Financing Statements that encompassed the assets and equipment from which the funds in this case arose.

Purchasers also purchased certain real property located on Montreal Circle in DeKalb County as part of the asset purchase. In connection with the purchase of the Montreal Circle property, Specialized Title Services, Inc. ("Specialized Title") performed an examination of the DeKalb County title records on August 12, 1998. In a letter to Specialized Title requesting the title search, Brooks Baker ("Baker"), the closing attorney involved in the asset purchase, wrote that there was a possibility of numerous liens outstanding on the Montreal Circle property (as well as on certain property located in Henry County that was part of the purchase), including IRS liens. While other encumbrances upon the property were discovered, however, no federal tax lien encumbering the Montreal Circle property or against Americare was discovered by Specialized Title. On September 30, 1998, the day of the closing of the transaction between Purchasers and Americare, Specialized Title again examined the DeKalb County records to determine whether any encumbrances existed upon the property or against Americare, but no lien was discovered.

Although no federal tax lien had been discovered either on or prior to the date of the closing, on August 24, 1998, the IRS had filed a Notice of Tax lien against Americare with the Superior Court of DeKalb County. The tax lien against Americare involved Form 941 taxes for the period ending March 31, 1997, in the amount of $202,839.20. According to Jeannette Rozier ("Rozier"), the DeKalb County Clerk of Superior Courts,[4] at the time the IRS' tax lien was filed and entered into the court computer system on August 24, 1998, a sticker and bar code were placed on the lien specifically indicating the date and time it was entered into the computer system as well as the book and page number

---

Thereafter, on September 30, 1998, Americare Child Enrichment Centers, Inc., which was formerly known as Americare Development, Inc., entered into a Limited Warranty Assignment & Bill of Sale with Sunshine House, pursuant to which Americare Child Enrichment Centers, Inc. conveyed all of its rights, title and interest under the Rental Agreement to Sunshine House.

**3.** Pursuant to GBA's unopposed motion to be discharged from these proceedings, GBA was dismissed as a party to this action by this Court on February 11, 2000. GBA has filed responses indicating that it takes no position with respect to either of the motions for summary judgment filed by the Sunshine House or the IRS.

**4.** The IRS did not identify Rozier at any time during discovery in this matter, and her testimony was not offered until after the IRS had filed its response to Sunshine House's motion for summary judgment.

it would later appear on in the deed books. Even though the lien had been entered into the court's computers, however, it was not immediately available in the public indices.[5] As an alternative to only searching the public indices, Rozier testifies that once a lien has been entered into the computer system the public can search for the lien with the assistance of clerk personnel at workstation computers at the information desk. The workstation computer provides up-to-the-minute alphabetized indices of deeds entered into the computer system even before they are made publicly available. Rozier also testifies that if an individual seeks a recently recorded or filed lien that does not appear in the public indices or on the workstation computer index, upon request the clerk of court personnel will search incoming mail and the records awaiting entry into the computers to assist the individual.

As discussed above, while the IRS' tax lien was filed on August 24, 1998, it had not yet been indexed in the DeKalb County public indices by the date of the closing, and it was not discovered by Specialized Title when it performed the title examination on the day of the closing. It was not until after the September 30th closing date that the Purchasers received notice of the IRS' tax lien.

## II. *DISCUSSION*

■ The outcome of this action rests upon whether the Sunshine House or the IRS has priority to the $66,839.59 being held in the registry of this Court. It is well-settled that the question of the priority of a federal tax lien is a question of federal, rather than state, law. *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). The rule providing for the priority of federal tax liens is codified in § 6321 of the Internal Revenue Code, which states: "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the

amount ... shall be a lien in favor the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The lien imposed by § 6321 arises at the time of the assessment and continues until the liability is satisfied or becomes unenforceable. 26 U.S.C. § 6322. However, "the lien imposed by section 6321, is not valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice of the federal tax lien is recorded as provided for in § 6323(f)." 26 U.S.C. § 6323(a). In addition, Section 6323 also provides that "[w]here, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any lien imposed by section 6321 or 6324." 26 U.S.C. § 6323(i)(2).

■ Under Georgia law, equitable subrogation arises when one having a liability, right or fiduciary relationship pays a debt due by another under such circumstances that he is, in equity, entitled to the securities held by the creditor who has been paid. " 'Subrogation ... is of equitable origin and benevolence. It is founded upon the dictates of refined justice. Its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice ... The courts incline rather to extend than restrict the principle.' " *Davis v. Johnson*, 241 Ga. 436, 439, 246 S.E.2d 297(1978) (quoting *Cornelia Bank v. First Nat. Bank of Quitman*, 170 Ga. 747, 750, 154 S.E. 234, 236 (1930)).

■ In the present case, Sunshine House contends that it is entitled to summary judgment because it became equitably subrogated to the rights of First National when it paid off the existing loan between First National and Americare,

---

**5.** Public indices include a computer index and the general execution index for notices of federal tax liens and deeds. The time between the filing of a lien or document and the

effective date of the record is identified as the "gap period." Documents filed and recorded in the gap period are not immediately available on the public indices.

and because said loan was prior in time to the IRS' federal tax lien, its security interest has priority over the tax lien. The IRS asserts, on the other hand, that Sunshine House is not entitled to equitable subrogation because it was negligent in failing to discover the IRS' properly recorded tax lien. The IRS argues that Sunshine House, through Specialized Title, could have used the workstation computers at the information desk of the clerk's office and asked clerk personnel to search incoming mails and records to discover the lien prior to the asset purchase closing at issue here. The government also argues that Sunshine House had at least constructive, if not actual, notice of the lien against Americare due to Baker's mention of the possibility of a lien in his letter to Specialized Title. The IRS contends that because Sunshine House's predicament was caused by its own negligence in conducting the title examination, it is not entitled to invoke the doctrine of equitable subrogation. This Court disagrees.

Simply because Sunshine House's agent could have asked for help from court personnel does not mean that it was negligent in not doing so. The IRS's bare allegation that Specialized Title should have done more in performing the search is insufficient for this Court to find that it was so negligent in not discovering the lien such that Sunshine House would not be entitled to equitable subrogation. The IRS has not pointed this Court to the duty or standard

of care that was purportedly breached by Specialized Title.[6] In addition, Baker's mention of the possibility of IRS liens in his letter to Specialized Title is insufficient to put Sunshine House on actual notice of a lien when no such lien was found in the public indices. Accordingly, the Court concludes that Sunshine House became equitably subrogated to First National's position as senior lienholder when it paid off the First National loan to Americare as part of the asset purchase agreement without knowledge of the IRS' filed but not yet publicly available tax lien.[7] Where the IRS does not dispute that First National's interest was prior in time and therefore superior to the federal tax lien, the Court finds that Sunshine House's security interest has priority over the IRS' lien, and summary judgment is GRANTED in favor of Sunshine House. *See, e.g., Dietrich Industries, Inc. v. U.S.*, 988 F.2d 568 (5th Cir.1993) (applying Texas law of equitable subrogation and finding purchaser's interest superior to federal tax lien).

### III. CONCLUSION

Sunshine House's Motion for Summary Judgment [15–1] is GRANTED. The IRS' cross Motion for Summary Judgment [24–1] is DENIED. The IRS' Motion to Strike Paragraphs 5 and 7 of the Affidavit of George C. Calloway [23–1] is DENIED. Sunshine House' Motion for Additional Time to Respond to the IRS' Motion for

---

**6.** Matthew Deberadinis, a title examiner with Specialized Title who has 15 years of experience in performing title searches, testified that his customary method of conducting the most updated search for a lien in the DeKalb County records is to look in a blue book in the general execution index, which is a computer printout that is updated daily. If there is no lien showing in the index, he will indicate that no lien on the property has been found. There is nothing to indicate that an examiner is then required to ask the clerk personnel to assist him if no lien is shown in the index.

**7.** The Court also notes here that "knowledge of the existence of an intervening encumbrance will not alone prevent the person advancing the money to pay off the

senior encumbrance from claiming the right of subrogation where the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer...." *Davis*, 241 Ga. at 438, 246 S.E.2d 297. The party seeking equitable subrogation is estopped from the same only when the intervening lienholder, in this case the IRS, has taken or purchased the lien in reliance upon his status as senior lienor. *Id.* at 440, 246 S.E.2d 297. At the time that the IRS filed its tax lien in this case, the security interests held by First National were superior to the tax lien, and thus the IRS could not have relied upon its status as a senior lienor. As such, Sunshine House is not estopped from claiming equitable subrogation.

Summary Judgment [29–1] is DENIED as moot.

The Clerk of Court is DIRECTED to release the total sum of $66,839.59 being held in the registry of this Court to the Sunshine House.