A02A0037. SUPERIOR BANK, FSB et al. v. HUMAN SERVICES EMPLOYEES CREDIT UNION.

(556 SE2d 155)

ELDRIDGE, Judge.

A used car dealer, Car Consultants Finance, Inc. d/b/a R & V Auto Sales, sold the 1994 Infiniti Q45 to Ronald and Veronica D. Wilborn for their personal use. On July 15, 1998, the Wilborns, individually, entered into an Open-End Credit Plan Security Agreement to purchase the 1994 Infiniti, vehicle identification number JNKG01D7RM258118, with Human Services Employees Credit Union. On August 11, 1998, the Credit Union perfected its security interest with the Georgia Department of Motor Vehicles.

On December 22, 1998, the Wilborns, who owned Car Consultants, had the used car dealer sell to Marilyn Billingsley by a retail automobile sales contract the car. Superior Bank, FSB financed Billingsley's purchase of this car and attempted to perfect its security interest in the car. Car Consultants did not pay off the car lien to the Credit Union or deliver the title so that its prior security interest was unknown to Billingsley and Superior Bank.

On November 17, 1999, after the prior security interest was dis-

covered, Billingsley and Superior Bank sued the Credit Union, the Wilborns, and Car Consultants to quiet title to the car and to determine that Superior Bank had the first lien. The Credit Union answered and counterclaimed to either regain possession or for conversion of the car. The Wilborns filed a plea of stay in bankruptcy, which was granted, and they were voluntarily dismissed from the suit. On October 20, 2000, the Credit Union moved for summary judgment. On May 23, 2001, the trial court granted summary judgment to the Credit Union and gave it possession of the car. We affirm, because the Credit Union did not know that the Wilborns had transferred the car to their dealership, Car Consultants, and had not consented to the sale by Car Consultants in the ordinary course of business as dealers; the Wilborns defaulted on repayment of the purchase financing to the Credit Union, and no one else has repaid such debt, giving the Credit Union the right of possession to the car. See OCGA § 11-2-403 (2).

1. The plaintiffs contend that the trial court erred in not finding that Billingsley was a buyer in the ordinary course of business — OCGA § 11-1-201 (9). They also contend that the trial court erred in finding that the Wilborns were prohibited from entrusting the car to Car Consultants for sale because of the security contract with the Credit Union. They further assert that the trial court erred in failing to apply OCGA § 11-2-403 to protect Billingsley as the good faith purchaser of entrusted goods in the ordinary course of business from a dealer in such goods. Plaintiffs also contend that the trial court failed to apply OCGA § 11-9-307. All of these issues must be decided together rather than in a piecemeal fashion, because the issues interlock.

The plaintiffs mistakenly rely upon several provisions of the Uniform Commercial Code for results not intended by the Code. First, reliance is placed on OCGA § 11-1-201 (9), definition of buyer in the ordinary course of business, which means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind. Secondly, they rely upon OCGA § 11-2-403 (2): "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business." OCGA § 11-2-403 (3) defines entrusting as "includ[ing] any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence." Finally, the plaintiffs rely upon OCGA § 11-9-307 (1), "[a] buyer in ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though

the buyer knows of its existence," and OCGA § 11-9-307 (2), "[i]n the case of consumer goods, a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value, and for his own personal, family, or household purposes unless prior to the purchase the secured party has filed a financing statement covering such goods." Despite the plain meaning of these statutes, plaintiffs attempt to cobble together a means to escape a statutorily created perfected security interest that was prior in time to the resale and financing.

The Credit Union possessed a perfected first security interest created by the Wilborns and recorded on the motor vehicle title certificate issued by the State of Georgia to the Wilborns for the car that they initially purchased from Car Consultants. See OCGA §§ 11-9-302 (3) (b); 40-3-50.

The Credit Union did not either own or possess the car, which belonged to the Wilborns who had both ownership and possession, and it had the right of possession only upon a default of the purchase money security interest by the Wilborns after Car Consultants failed to pay off its security interest upon resale. Therefore, only the Wilborns were the entrusters under the facts and law of this case, because OCGA § 11-2-403 (2) and (3) apply only to the owner of the goods as the entruster. *Sunnyland &c. Credit Union v. Fort Wayne Mtg. Co.*, 182 Ga. App. 5, 6 (354 SE2d 645) (1987) (the first security holder was not the owner and could not be the entruster even if it, upon default, placed the personalty with a dealer for resale; the security interest survived resale); *United Carolina Bank v. Sistrunk*, 158 Ga. App. 107, 109 (1) (279 SE2d 272) (1981) (secured party is not the entruster, only the owner can be the entruster under this section; therefore, the security interest survived resale). Thus, the Wilborns, as owners, knowingly placed the car for sale with a dealer of such goods, Car Consultants, to sell the car. However, this did not impair the Credit Union's prior perfected security interest.

Thus, under the facts of this case, the Wilborns, and not the Credit Union, were the "entrusters," because they held title subject to the Credit Union's security interest. Therefore, they alone had the right to entrust the car to Car Consultants, a dealer in such goods, to sell only under OCGA § 11-2-403 (2) and (3) "all rights of the entruster," which was subject to the prior perfected security interest in the Credit Union. Billingsley acquired what title the Wilborns had and ownership in the car; Superior Bank obtained a subordinate second security interest in the car subject to the Credit Union's perfected pre-existing security interest.

A different interpretation of [OCGA § 11-2-403 (2) and (3)] as to whether an entruster can empower a dealer to transfer

rights of the secured creditor in the goods[ ] would contravene [OCGA § 11-9-306 (2),] which provides: "Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party and also continues in any identifiable proceeds." [OCGA § 11-2-403 (2) and (3) are] a precisely limited exception to the common law rule that the seller can convey no greater title than he has himself. The enactment states specifically that what is transferred is "all the rights of the entruster"; it does not give the transfer of "good title and possession," and it certainly does not give transfer of the rights of secured parties. The statute itself therefore does not, expressly or even impliedly, abrogate the clear intent of [OCGA § 11-9-306 (1)], providing for the continuation of [the Credit Union's] perfected security interest.

(Citation and punctuation omitted.) *Commercial Credit Equip. Corp. v. Bates*, 154 Ga. App. 71, 74 (I) (A) (267 SE2d 469) (1980). Where the security interest was properly perfected prior to the sale by the entruster to the good faith purchaser, the prior security interest must prevail in priority to any subsequently created security interest because it survives the subsequent sale. *Commercial Credit Equip. Corp. v. Bates*, 159 Ga. App. 910, 911 (285 SE2d 560) (1981) (perfected and recorded security gave notice of security interest); *First Nat. Bank &c. Co. v. Olivetti Corp. &c.*, 130 Ga. App. 896, 898-899 (1) (204 SE2d 781) (1974) (prior recorded financing statement gave notice to other creditors of the perfected security interest even if the secured party was the entruster as seller).

Neither can [Billingsley and Superior Bank] prevail against the security interests of [the Credit Union] on the theory that, under [OCGA § 11-9-307 (1)], as "a buyer in the ordinary course of business he takes free of a security interest created by his seller." The security interest in this case was created not by [Billingsley's] seller, [Car Consultants], but by [the Wilborns], the original purchaser. [OCGA § 11-9-307 (1)] is intended to protect buyers in the ordinary course from the lien claims of creditors who have financed "floor plan" (inventory) arrangements for the dealer. The guiding principle in UCC § 9-307 (1) is to protect a buyer in the ordinary course of business from a dealer against reservation of title or other hidden interests in goods. We find this intent to be clearly evinced in the statute itself, for a buyer in the ordinary course is protected from "a security interest created by

his seller *even though the buyer knows of its existence.*"
[OCGA § 11-9-307 (1)]. [Billingsley] does not take free of [the
Credit Union's] security interest in this case; it was not a
security interest created by [her] seller, the dealer, and was
not of the class of liens from which the Code section intends
to protect a buyer in the ordinary course of business.

(Citations and punctuation omitted; emphasis in original.) *Commercial Credit Equip. Corp. v. Bates*, supra at 74-75 (I) (B).

When, as here, a security interest is noted on the certificate
of title for a vehicle, the certificate of title is deemed to provide constructive notice to future creditors of the owner,
including mechanics, that the vehicle is encumbered by a
security interest. . . . Therefore, [a subsequent purchaser
or creditor] is deemed to have constructive knowledge of [the
prior perfected] security interest and pursuant to OCGA
§ 40-3-54, [the Credit Union's] security interest takes priority over the [subsequent security interest].

(Citations omitted.) *Washington State Employees Credit Union v. Robinson*, 206 Ga. App. 782, 784 (3) (427 SE2d 15) (1992).

2. Plaintiffs contend that the trial court erred in not considering
OCGA § 11-2-401 (2), which provides that, unless otherwise agreed,
title passes at the time and place at which the seller completes his
performance with reference to physical delivery of the goods.

OCGA § 11-2-401 (1) provides in part that

[t]itle to goods cannot pass under a contract for sale prior to
their identification to the contract. . . . Any retention or
reservation by the seller of the title (property) in goods . . .
delivered to the buyer is limited in effect to a reservation of
a security interest. Subject to these provisions and to the
provisions of the article on secured transactions (Article 9 of
this title), title to goods passes from the seller to the buyer in
any manner and on any conditions explicitly agreed on by
the parties.

Subsection (2) reads: "[u]nless otherwise explicitly agreed title passes
to the buyer at the time and place at which the seller completes his
performance with reference to the physical delivery of the goods,
despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place." There is
no question that title subject to the perfected security interest passed
to Billingsley from the Wilborns as entrusters to Car Consultants
under the facts of this case. See *Right Touch of Class v. Superior*

*Bank*, 244 Ga. App. 473, 474 (1) (536 SE2d 181) (2000) (the secured party with the perfected security interest was the seller to another dealer and retained the title until the subsequent sale and financing paid off the original sales lien). Under the holding of Division 1 and the authorities cited therein, the title which Billingsley obtained was subject to the prior perfected security interest of the Credit Union.

3. The remaining enumerations of error were answered and are controlled by Division 1.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 24, 2001 —
RECONSIDERATION DENIED NOVEMBER 16, 2001 —

*Bridgers, Stringfellow, Bland & Peters, Henry R. Stringfellow,* for appellants.

*Macey, Wilensky, Cohen, Wittner & Kessler, Michael C. Kaplan,* for appellee.