In re SISKEY HAULING COMPANY, INC., Debtor.

Jeffrey K. Kerr, Chapter 7 Trustee, Plaintiff,

v.

Commercial Credit Group, Inc., Siskey & Sons Hauling Company, Atlanta Fuel Company, And Fleetone Factoring, LLC, Defendants.

Bankruptcy No. 10–77265–MGD.
Adversary No. 10–06493–MGD.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 3, 2011.

C. David Butler, Shapiro Fussell, Atlanta, GA, for Debtor.

Chris D. Phillips, Stuart F. Clayton, Jr., Lamberth, Cifelli, Stokes, Ellis & Nason Atlanta, GA, for Plaintiff.

John A. Thomson, Jr., Womble Carlyle Sandridge & Rice, PLLC, Ryan L. Isenberg, Isenberg & Hewitt, PC, Thomas Rosseland, Bodker, Ramsey, Andrews, et al., P.C., Ron C. Bingham, II, Stites & Harbison PLLC, Atlanta, GA, Michael W. Ullman, Ullman & Ullman, PA, Boca Raton, FL, for Defendants.

### ORDER DENYING DEFENDANT FLEETONE FACTORING LLC'S MOTION FOR SUMMARY JUDGMENT

MARY GRACE DIEHL, Bankruptcy Judge.

This adversary proceeding is before the Court on Defendant FleetOne Factoring LLC's ("FleetOne") Motion for Summary Judgment ("Motion"). (Doc. No. 62). FleetOne's Motion seeks summary judgment on its counterclaim and crossclaims filed in response to the Complaint by Jeffrey K. Kerr, the Chapter 7 Trustee ("Trustee"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core matter under 28 U.S.C. § 157(b)(2).

In short, Trustee's Complaint seeks to determine the extent, validity, and priority of the liens on Debtor's accounts receiv-

able, and to avoid certain liens and transfers under the Trustee's avoiding powers. FleetOne's counterclaim and crossclaims assert that FleetOne holds a first-priority, perfected security interest in Debtor's accounts receivable. For the reasons set forth below, FleetOne's Motion is **DENIED.**

This Order only addresses the issues necessary to rule on FleetOne's Motion for Summary Judgment. The extent, validity, and priority of the other parties' security interests in Debtor's accounts receivable will be resolved when ripe for the Court's determination.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual History

The undisputed material facts are as follows. Siskey Hauling Company, Inc. ("Debtor") operated as a trucker and carrier in Georgia and other parts of the Southeast. For its financing needs, Debtor entered into a financing arrangement with Maple Commercial Finance Corporation ("Maple") in 2006.[1] Under this agreement, Debtor granted Maple a security interest in the form of a lien on Debtor's accounts receivable, and Maple filed a UCC financing statement ("UCC-1") to perfect its security interest on January 12, 2006. (*FleetOne's Statement of Material Facts* ("*FSOMF*")) ¶ 8(a); Doc. No. 17, Exhibit 4). Maple amended the same UCC-1 in August 2006 and then again in April 2008. (*FSOMF* ¶ 8(c); Doc. No. 17, Exhibit 5). The April 2008 amendment reflected that Maple's successor, RBC Capital, LLC ("RBC"), now held the lien on Debtor's accounts receivable. (*FSOMF* ¶ 8(d); Doc. No. 17, Exhibit 7).

On October 29, 2009, Commercial Credit Group, Inc. ("CCG") advanced funds to Debtor, and Debtor granted CCG a security interest in various trucks, trailers, and "any and all accounts [and] accounts receivable[.]" (*FSOMF* ¶ 9; Doc. No. 59 in Case No. 10–77265, Exhibits A & B). CCG filed a UCC-1 on November 4, 2009 to perfect its lien on Debtor's accounts receivable and equipment. (*FSOMF* ¶¶ 11–12; Doc. No. 59 in Case No. 10–77265, Exhibit D).

After Debtor defaulted on an obligation to Atlanta Fuel Company ("AFC"), a consent judgment was entered in the Superior Court of Cobb County on December 3, 2009 in favor of AFC. (*FSOMF* ¶ 13). AFC recorded its judgment in the Superior Court of Cobb County on February 23, 2010. (*Id.* ¶ 14). AFC later sought to collect its judgment by serving a summons of garnishment on RBC and FleetOne on May 26, 2010. (*Id.* ¶ 15; Doc. No. 17, Exhibit 2).

On May 11, 2010, FleetOne and Debtor entered into a "Purchase Agreement" under which FleetOne agreed to purchase Debtor's accounts receivable. (*FSOMF* ¶ 6; Doc. No. 63, Attachment 6/Exhibit 3). Under the Purchase Agreement, Debtor assigned any interest it had in the accounts receivable to FleetOne. (*FSOMF* ¶ 2.1; Doc. No. 63, Attachment 6/Exhibit 3). Debtor also granted FleetOne a lien on Debtor's accounts receivable. (*FSOMF* ¶ 6; Doc. No. 63, Attachment 6/Exhibit 3). FleetOne perfected the lien by filing a UCC-1 on May 11, 2010. (*FSOMF* ¶ 7; Doc. No. 63, Attachment 6/Exhibit 3). On May 17, 2010, FleetOne and RBC executed a "Buy-Out Agreement" under which RBC

1. The Court notes that the details of this relationship and transaction are not in the record. The Court does not determine if this transaction was a true factoring agreement. The material fact, though, is that Debtor granted Maple a security interest in its accounts receivable.

released all liens on and interests in Debtor's accounts receivable. (*FSOMF* ¶¶ 2–5; Doc. No. 63, Attachment 8/Exhibit 5). In exchange, FleetOne advanced funds to RBC totaling $523,062.43. (*FSOMF* ¶¶ 2–5.) Also under the Buy–Out Agreement, Debtor granted RBC a complete release. (Buy–Out Agreement ¶ 16, at Doc. No. 63, Attachment 8/Exhibit 5).

Before entering into the Purchase Agreement, FleetOne contracted with CT Liens Solutions to perform searches for UCC–1 filings and federal tax liens, state tax liens, and judgment liens.[2] ("Unsworn Declaration of Steven Pritchard, FleetOne Factoring, LLC's Corporate Representative under 28 U.S.C. § 1746," at Doc. No. 63, Attachment No. 3). In addition to a tax lien and judgment lien search report, CT Lien Solutions delivered a "UCC Search Report" to FleetOne dated May 10, 2010. (Doc. No. 63, Attachment 4/Exhibit 1, p. 13). CCG was the first party listed on the UCC Search Report. (*Id.* at p. 1). Additionally, FleetOne contacted W.J. Mattocks, an officer of CCG, sometime during May 2010 to ask if CCG would voluntarily subordinate its prior perfected lien on Debtor's accounts receivable. (*Trustee's Response to FleetOne's MSJ* p. 11–12; *CCG's Response to FSOMF* II. ¶¶ 48–50; Doc. No. 72, "Pleading Affidavit of W.J. Mattocks" ¶¶ 68–71).

## B. Procedural History

Before Debtor's Chapter 11 filing, and in response to AFC's summons of garnishment, RBC commenced an interpleader action in state court to determine ownership of funds that RBC identified as Debtor's accounts receivable. (Doc. No. 1 in Case No. 10–06290, ¶¶ 1–2). Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on June 11, 2010. The state court interpleader action was removed to the bankruptcy court on June 23, 2010. (*Id.*). Claiming no interest in the funds, RBC asked the Court to determine whether the funds belonged to FleetOne, under the Purchase Agreement and Buy–Out Agreement, or to AFC, under its summons of garnishment. (*Id.* at ¶¶ 5–7). CCG was not named as a party to the interpleader.

A hearing on Debtor's "first day motions" was held on June 21, 2011. (Doc. No. 12 in Case No. 10–77265). In its first day motions, Debtor sought to obtain debtor-in-possession financing through a factoring agreement with FleetOne, which provided Debtor with factoring pre-petition. (Doc. No. 10 in Case No. 10–77265). The proposed debtor-in-possession financing provided for the amount owing on FleetOne's pre-petition factoring agreement to be paid off. (*Id.*). AFC objected to the proposed debtor-in-possession financing, asserting that it held a senior lien on Debtor's accounts receivable. (Doc. No. 17 in Case No. 10–77265).

An interim Order granting Debtor's first day motions was ultimately entered on June 30, 2010. (Doc. No 54 in Case No. 10–77265). AFC's objection to the debtor-in-possession financing was then consolidated with the removed interpleader ac-

---

**2.** In his unsworn declaration, Mr. Steven Pritchard of FleetOne stated that FleetOne contracted with CT Liens Solutions on May 7, 2010 to perform a search for all federal tax liens, state tax liens, and judgment liens. ("Unsworn Declaration of Steven Pritchard, FleetOne Factoring, LLC's Corporate Representative under 28 U.S.C. § 1746," at Doc. No. 63, Attachment No. 3.) Mr. Pritchard does not mention a search for UCC filings. But the attachments to Doc. No. 63 include a UCC filings search report (Attachment No. 4) and a tax lien and judgment lien search report (Attachment No. 5). It is therefore clear, based on the attachments to the pleadings of FleetOne, that CT Liens Solutions performed both searches for FleetOne.

tion. (Doc. No. 55 in Case No. 10–77265). These consolidated issues were set for hearing on July 12, 2010. (Doc. No. 54 in Case No. 10–77265). The U.S. Trustee moved to dismiss or convert the case on June 29, 2010 because Debtor had not filed its Schedules and Statement of Financial Affairs. (*Id.*). Before the July 12 hearing on the consolidated issues was held, Debtor's case was converted to a case under Chapter 7 on July 2, 2010. (Doc. No. 63 in Case No. 10–77265).

Trustee commenced this separate adversary proceeding on September 2, 2010. (Doc. No. 1). Trustee's Complaint seeks to 1) determine the extent, validity, and priority of liens and claims against Debtor's accounts receivable and certain equipment; 2) avoid monetary transfers to Siskey & Sons Hauling Company and Commercial Credit Group, Inc.; 3) avoid liens of Commercial Credit Group, Inc.; and 4) avoid garnishment lien of Atlanta Fuel Company and FleetOne Factoring, LLC. (Doc. No. 1). FleetOne filed a counterclaim against Trustee and cross-claims against CCG and AFC. (Doc. No. 17).

FleetOne filed its Motion for Summary Judgment on April 11, 2011, asserting that it held the first-priority lien on Debtor's accounts receivable. (Doc. No. 62). AFC responded that its lien was senior to Flee-tOne's lien. (Doc. No. 75). CCG responded that it held the first-priority lien on Debtor's accounts receivable. (Doc. No. 72). And finally, Trustee asserted a first-priority lien in the Debtor's accounts receivable. (Doc. No. 73). FleetOne filed a reply to these responses on May 31, 2011. (Doc. No. 83).

## II. APPLICATION OF LAW

In accordance with Rule 56 of the Federal Rules of Civil Procedure, applicable to this Court pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). "Material facts" are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). When the nonmoving party bears the burden of proof at trial, the burden can be satisfied if the moving party demonstrates the absence of evidence supporting the nonmoving party's case. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1259 (11th Cir.2004). In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985). It remains the burden of the moving party to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Here, based solely on the filing of UCC financing statements as of the bankruptcy petition date, without considering other legal or equitable arguments affecting priority, CCG's perfected lien was prior in time to FleetOne's lien, AFC's lien, and Trus-

tee's status as a judgment lien creditor.[3] Though its lien is later in time, FleetOne asserts the following arguments to support its senior lien claim: 1) FleetOne should be equitably subrogated to the first-priority position; 2) FleetOne owns the accounts receivable free and clear of the bankruptcy estate's interest; and 3) FleetOne can avoid CCG's lien. (*Memorandum of Law in Support of FleetOne's Motion for Summary Judgment* ("*FleetOne's MSJ Memo*")). FleetOne is not entitled to summary judgment on any of its arguments because the undisputed facts do not compel judgment in FleetOne's favor as a matter of law.

**A. *FleetOne cannot be granted summary judgment on the issue of equitable subrogation because it is guilty of inexcusable neglect and CCG would be prejudiced.***

■ FleetOne is not entitled to summary judgment on the issue of equitable subrogation. Equitable subrogation is a doctrine recognized under Georgia law[4] that allows a party who pays off the lien of a senior creditor to succeed to the legal rights and priority of that senior creditor. *Byers v. McGuire*, 285 Ga. 530, 536–37, 679 S.E.2d 1 (2009). In short, the party who pays off the lien is able to step into the shoes of the senior creditor whose lien was paid off. *Greer v. Provident*, 282 Ga.App. 566, 568, 639 S.E.2d 377 (2006). The Geor-

gia Supreme Court has defined equitable subrogation as follows:

> Where one advances money to pay off an encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance, either upon the express understanding or under circumstances under which an understanding will be implied that the advance made is to be secured by the senior lien on the property, in the event the new security is for any reason not a first lien on the property, the holder of the security, if not chargeable with culpable or inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equity of others would be prejudiced thereby; knowledge of the existence of an intervening encumbrance will not alone prevent the person advancing the money to pay off the senior encumbrance from claiming the right of subrogation where the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer.

*Davis v. Johnson*, 241 Ga. 436, 438, 246 S.E.2d 297 (1978).

■ To reiterate the Georgia law, the doctrine is only applied in certain circumstances. The party seeking to be subrogated must show that it was not guilty of culpable or inexcusable neglect and that the superior or equal equity of others

---

**3.** It is immaterial for purposes of this Order whether FleetOne has priority over AFC. If FleetOne does not prevail on its senior lien claim as to CCG, the dispute reduces into one between CCG and Trustee. Trustee seeks to avoid CCG's liens on Debtor's assets under 11 U.S.C. § 548(a) and to recover them for the benefit of the estate. This issue is also not determinative for purposes of FleetOne's Motion for Summary Judgment.

**4.** This Court has noted that "Equitable subrogation is a precept of Georgia real estate law

which has its origins in a 1898 Georgia Supreme Court case, *Merchants' & Mechanics' Bank v. Tillman*, 106 Ga. 55, 31 S.E. 794 (1898)." *In re Sharma*, 2005 WL 6486399 (Bankr.N.D.Ga.2005). While noting its use in Georgia real estate law, this Court makes no ruling as to whether equitable subrogation is limited to the real estate context. Assuming it applies in the context of accounts receivable, FleetOne is nevertheless not entitled to equitable subrogation under the undisputed facts.

would not be prejudiced. *Greer,* 282 Ga. App. at 569, 639 S.E.2d 377. And while knowledge of an intervening lien will not in itself bar equitable subrogation, a party with knowledge of an intervening lien must show that applying equitable subrogation will *not in a substantial way* prejudice the rights of the intervening lienholder. *Id.*

 Further, the doctrine "is not applied for the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, being under no legal obligation to make the payment and not being compelled to do so for the preservation of any rights or property of his own." *Bankers Trust Co. v. Hardy,* 281 Ga. 561, 564, 640 S.E.2d 18 (2007). Thus, even when a party is not obligated to pay off a debt, equitable subrogation can still apply if the " 'party advanced money under an agreement, express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor.' " *Byers,* 285 Ga. at 537, 679 S.E.2d 1 (*quoting Bankers,* 281 Ga. at 564 n. 8, 640 S.E.2d 18).

 Some evidence of an implied agreement to subrogate, however, does not end the matter. If the party seeking to be subrogated had knowledge of an intervening lien, that knowledge would " 'tend to indicate an intent to give priority to the intervening lien, as well as the absence of an understanding that the advance would be secured by a senior lien on the property.' " *Id.* (*quoting Davis v. Johnson,* 241 Ga. at 439, 246 S.E.2d 297). And further, knowledge of an intervening lien puts a party on notice to avail itself of a proper legal remedy, such as gaining the first-priority position through assignment. *Bank of Danielsville v. Seagraves,* 167 Ga. App. 135, 142, 305 S.E.2d 790 (1983). The Georgia Court of Appeals has explained that a party who fails to avail itself of a proper legal remedy is guilty of inexcusable neglect. *Secured Equity v. Wash. Mut. Bank,* 293 Ga.App. 50, 53–54, 666 S.E.2d 554 (*citations omitted*).

 Finally, equitable subrogation is a doctrine of equity. A party will only be granted equitable relief when there is no available, adequate, and complete remedy at law. *Cantrell v. Henry County,* 250 Ga. 822, 824, 301 S.E.2d 870 (1983). When "a party knowingly refuses to avail itself of its complete legal remedy," equitable relief cannot be had. *Bank of Danielsville,* 167 Ga.App. at 142, 305 S.E.2d 790. Commentary by secondary sources reiterates the rule that equitable relief is not available by right: as an equitable doctrine, "it is within the sound discretion of a court to allow the new creditor to succeed to the secured rights of the prior creditor if the underlying facts reveal that such a result would accomplish fairness as among all parties and avoid windfall benefits." Frank Alexander, Georgia Real Estate Finance And Foreclosure Law § 3:4(d) (2010–2011 ed.).

In the case at hand, the Court first turns to the terms of the Buy–Out Agreement. RBC held the first-priority lien on Debtor's accounts, as evidenced by the April 2008 UCC–1. Under the Buy–Out Agreement, RBC did not assign its senior interest in Debtor's accounts receivable to FleetOne. Rather, the parties structured a transaction in which RBC released its lien on and interest in Debtor's accounts on May 17, 2011, and Debtor released all claims against RBC. Debtor sold its accounts receivable to FleetOne on May 11, 2011, and also granted FleetOne a security interest in them. Though FleetOne filed its UCC–1 before the Buy–Out Agreement was executed, FleetOne did not step into the priority status of RBC after RBC released its lien on and interest in Debtor's accounts receivable. When RBC released its first-priority lien on Debtor's accounts

receivable, the party with the second-priority lien (behind RBC) immediately ascended to the first-priority position. CCG held the second-priority lien because CCG's UCC–1 was filed on November 4, 2009, before FleetOne's UCC–1 was filed. Thus, CCG became the first-priority lienholder, not FleetOne.

Equitable subrogation may apply in situations similar to this. Here, FleetOne did pay off a debt owing to RBC, which held the first-priority lien on Debtor's accounts receivable. But under the undisputed facts, FleetOne is not entitled to equitable subrogation because it is guilty of inexcusable neglect. Further, FleetOne is not entitled to equitable subrogation because the equal equity of CCG would be prejudiced.

As a preliminary matter, the Court does not need to rule on whether the undisputed facts show an implied agreement to subrogate between FleetOne, RBC, and Debtor. If there was no implied agreement, then FleetOne would not be entitled to equitable subrogation. *Byers*, 285 Ga. at 537, 679 S.E.2d 1. Equitable subrogation "is not applied for the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation[.]" *Bankers*, 281 Ga. at 564, 640 S.E.2d 18. Even assuming there was an implied agreement, FleetOne's is guilty of inexcusable neglect because it knew of CCG's lien and failed to undertake the legal steps necessary to give it a superior position.

Knowledge of an intervening lien will by itself not prevent a party from being equitably subrogated. *Byers*, 285 Ga. at 536–37, 679 S.E.2d 1. Here, however, FleetOne was aware of more than the mere fact that CCG might have an intervening lien. First, FleetOne received a UCC filings search report showing all parties that had filed UCC–1s as to Debtor, and CCG was

the first party listed on the report. (Doc. No. 63, Attachment No. 4). Second, CCG has submitted an affidavit evidencing that FleetOne communicated with CCG to ask if CCG would voluntarily subordinate its lien on Debtor's accounts. (*CCG's Response to FleetOne's MSJ*, Doc. No 72, p. 13). FleetOne has not offered any evidence to refute this testimony. While the exact timing of FleetOne's inquiry is not in evidence, this communication indicates that FleetOne understood it would not automatically acquire the priority position and rights of RBC by simply filing a UCC–1. FleetOne was aware that something had to be done to acquire the first-priority position. Accordingly, FleetOne was on notice to execute an assignment of RBC's interest to ensure FleetOne stepped into RBC's first-priority position.

■ FleetOne had a remedy at law: a properly structured transaction with Debtor and RBC to legally succeed to the priority position of RBC. FleetOne did include Debtor as part of its transaction, and Debtor did assign its interest in the accounts to FleetOne. But that alone was insufficient to ensure FleetOne the first-priority position held by RBC. The first-priority position held by RBC had to be assigned by RBC. Instead, RBC released its lien on and interest in Debtor's accounts. A party who fails to avail itself of a proper legal remedy is guilty of inexcusable neglect. *Secured Equity*, 293 Ga.App. at 53–54, 666 S.E.2d 554. Here, FleetOne failed to avail itself of a proper legal remedy when it had the chance. FleetOne is therefore guilty of inexcusable neglect by carelessly structuring its transactions with RBC and Debtor.

Additionally, general principles of equity weigh against allowing FleetOne to step into to a priority position that FleetOne inexcusably neglected to legally secure. *Bank of Danielsville*, 167 Ga.App. at 142,

305 S.E.2d 790. FleetOne may have believed it would properly acquire RBC's first-priority position through the Purchase Agreement and Buy–Out Agreement, even though it knew of CCG's lien. But a party must be charged with knowing the law that governs the priority of security interests. To grant equitable relief when a party fails to follow these rules renders the rules meaningless. If FleetOne could be equitably subrogated despite its knowledge, then why should any party ever do a UCC filings search or a lien search? FleetOne's failure to acquire the first-priority position by assignment was not because of minor inadvertence or neglect with respect to discovering CCG's lien, but because it failed to avail itself of a remedy at law.

Finally, equitably subrogating FleetOne prejudices the equal equity of CCG. At first glance, it appears that CCG is not prejudiced because CCG held the second-priority lien behind RBC to begin with. CCG would not receive the funds in the accounts receivable had not FleetOne paid off RBC. FleetOne therefore argues that not equitably subrogating FleetOne creates a windfall benefit to CCG. But closer analysis shows otherwise.

CCG properly perfected its security interest in Debtor's accounts receivable by filing a UCC–1, and therefore has a legal right to the funds in those accounts. And CCG properly protected its interests by refusing to voluntarily subordinate its lien at the request of FleetOne. Whereas CCG is an innocent party, FleetOne is not an innocent party. CCG does not, then, receive an undeserved windfall benefit. CCG receives what it does by protecting its interest under the law. That CCG might ultimately benefit from FleetOne's neglect is not grounds for applying equitable subrogation. *Bankers*, 281 Ga. at 563–64, 640 S.E.2d 18. FleetOne is a sophisti-cated business that voluntarily entered into a factoring agreement with Debtor, with full ability to structure the transactions with RBC and Debtor to secure a first-priority lien position. Given FleetOne's knowledge of CCG's lien, equitably subrogating FleetOne would prejudice CCG.

Consequently, under the undisputed facts, FleetOne is not entitled to summary judgment on the issue of equitable subrogation.

### B. The bankruptcy estate has an interest in the accounts receivable.

■ FleetOne asserts that Trustee cannot seek to recover any interest in the accounts receivable because the accounts receivable are not part of the bankruptcy estate. According to FleetOne, the accounts receivable are not part of the estate because, having been sold to FleetOne, Debtor had no possession or control over the accounts at the time of the bankruptcy filing. (*FleetOne's MSJ Memo*, p. 24). And FleetOne further argues that it purchased the accounts receivable from Debtor outright and that Debtor retained no interest in them. Though it may appear Debtor retains some interest because FleetOne created a security interest in Debtor's current and future accounts receivable, FleetOne argues that the security interest does not change FleetOne's outright ownership of the accounts receivable at issue. FleetOne cites to Georgia law providing that a seller of accounts receivable retains no interest in the accounts, even if the sale provides for the buyer to retain a security interest in the seller's accounts receivable. *Id.* at 24–25; O.C.G.A. § 11–9–318 (2011).

The undisputed facts do not compel judgment as a matter of law on this issue. First, the Eleventh Circuit has addressed the issue of whether factored receivables

are property of the bankruptcy estate in *Capital Factors, Inc. v. Empire For Him, Inc. (In re Empire For Him, Inc.)*, 1 F.3d 1156, 1159 (11th Cir.1993). That case involved a dispute between a seller and buyer (i.e., factor) of accounts receivable pursuant to a factoring agreement. *Id.* at 1157–58. The buyer contended that the funds collected pursuant to the factoring agreement were not property of the estate. *Id.* at 1159. Rejecting this contention, the Eleventh Circuit held that funds collected pursuant to a factoring agreement are estate property under 11 U.S.C. § 541(a)(1). *Id.* at 1159.

Second, Debtor retains an interest in the accounts receivable because of the recourse rights granted to FleetOne under the Purchase Agreement. Though FleetOne's "Purchase Agreement" with Debtor provided for FleetOne to retain a security interest in Debtor's accounts receivable, that alone does not cause Debtor to retain an ownership interest in the them. But language in the Purchase Agreement provides FleetOne with recourse against Debtor. When a buyer of accounts receivable holds substantial recourse against the seller, thereby shifting all risk of non-collection on the seller, courts have routinely held the transaction to be a financing arrangement and not a sale. *Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc.*, 602 F.2d 538, 544–45 (3d Cir. 1979); *Lange v. Inova Capital Funding, LLC(In re Qualia Clinical Serv., Inc.)*, 441 B.R. 325, 329–31 (8th Cir. BAP 2011) (finding an invoice purchase agreement that shifted all risk of non-collection to the seller to be a "disguised loan rather than a true sale.").

In *Major's*, the Ninth Circuit Court of Appeals similarly ruled that a sale of accounts receivable was a loan when none of the risks associated with a true sale were present. *Major's*, 602 F.2d at 546–46.

There, the seller bore the risk because the seller had to warrant the credit worthiness of the account debtors, the buyer held a reserve from the purchase price to protect it against nonpaying accounts, and the seller was required to repurchase delinquent accounts. *Id.*

Here, the Purchase Agreement between FleetOne and Debtor lacks the allocation of risk on a buyer that is typically associated with a true sale. FleetOne could charge back any receivable to Debtor that remained unpaid after 90 days, and FleetOne held a reserve of 10% of the purchase price on each receivable against non-collection. (*Purchase Agreement's* Exhibit A ¶¶ 3–4, at Doc. No. 63, Attachment 6). Further, FleetOne may charge Debtor for any if deficiency on an account, and also for any fees or costs associated with a disputed account. (*Purchase Agreement* ¶ 5. 1, at Doc. No. 63, Attachment 6). And the Purchase Agreement further provides that:

> If there is any Dispute as to any Receivable, FleetOne Factoring may at any time charge back the amount of such Receivable to [Debtor]. Immediately upon the occurrence of any Dispute, and regardless of the date on which FleetOne Factoring charges back the affected Receivable, the Credit Risk on such receivable shall automatically revert to [Debtor]. FleetOne Factoring may also charge back the amount of any Receivable which is not paid to FleetOne Factoring at maturity due to acts of God, war, civil strife, currency restrictions, foreign political impediments or the like.

(*Purchase Agreement* ¶ 5. 1, at Doc. No. 63, Attachment 6).

FleetOne's recourse against Debtor effectively transfers the risk of non-collection on Debtor. The Court therefore construes the transaction as a loan, not a sale. Accordingly, the accounts receivable "pur-

chased" by FleetOne are part of Debtor's estate.[5]

■ But even assuming that Debtor retained no interest in the accounts receivable, CCG (and therefore potentially the bankruptcy estate) can still assert an interest in the accounts receivable. Under Georgia statutory law, "[a] security interest ... continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest ..." *O.C.G.A.* § 11–9–315(a)(1) (2011); *Superior Bank v. Human Serv. Employees Credit Union,* 252 Ga.App. 489, 492–93, 556 S.E.2d 155 (2001). Generally, when property that is subject to a security interest is sold, the security interest survives the sale and continues in the property. *Id.* Thus, CCG's lien on the accounts receivable was not extinguished when Debtor sold the accounts receivable to FleetOne. Rather, CCG's lien continued in the accounts receivable. FleetOne, then, purchased Debtor's accounts receivable subject to CCG's lien. CCG therefore retained an interest in the accounts receivable.

Under § 541(a)(3), any interest in property the trustee recovers under § 550 (using either § 544 or § 548), is property of the bankruptcy estate. 11 U.S.C. § 541(a)(3). And under § 551, a lien that is avoided under § 544 or § 548 is preserved for the benefit of the estate. 11 U.S.C. § 551. If Trustee prevails in avoiding CCG's lien as a fraudulent transfer under § 544 or § 548, then CCG's lien would be preserved for the benefit of the estate. In other words, were Trustee to avoid CCG's lien, secured creditors with liens junior to CCG's lien would not solely reap the benefits of CCG's avoided lien. CCG's avoided lien will remain in the first-

priority position and it will be brought into Debtor's estate. 11 U.S.C. §§ 541(a)(4), 544, 548, and 551. The estate therefore has a potential interest in the accounts receivable, and FleetOne is not entitled to judgment as a matter of law.

### C. Only the Trustee can avoid CCG's lien as a fraudulent transfer.

FleetOne also asserts that it holds the first-priority lien on Debtor's accounts because CCG's lien, though prior in time, should be avoided for CCG's benefit. According to FleetOne, CCG's lien is avoidable under Georgia's Uniform Fraudulent Transfer Act ("UFTA"), and therefore FleetOne's lien takes priority over CCG's. The undisputed facts do not compel judgment as a matter of law on this issue.

■ Generally, only the trustee can avoid a fraudulent transfer, and an avoided transfer is then recovered by the trustee and brought back into the estate for distribution to unsecured creditors. 11 U.S.C. §§ 541(a)(4), 544, and 551. Section 544(b) of the Bankruptcy Code allows a trustee to avoid any transfer "of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim ..." 11 U.S.C. § 544(b)(1). While § 544(b) explicitly provides that the trustee may avoid fraudulent transfers using applicable state law (e.g., UFTA), § 544 does not explicitly provide for any other party to do so. Thus, on its face, § 544 does not give standing to avoid fraudulent transfers to any party but the trustee. And narrowly defining who has standing in a bankruptcy proceeding helps achieve the Bankruptcy Code's policy of efficiently administering bankruptcy estates. *Richman v. First Woman's Bank*

---

**5.** FleetOne still retains a security interest in the accounts receivable, however.

*(In re Richman)*, 104 F.3d 654, 656–57 (4th Cir.1997).

██ With the bankruptcy court's approval, a creditor may be allowed derivative standing to bring avoidance actions in limited circumstances. *In re McGuirk*, 414 B.R. 878, 879–80 (Bankr.N.D.Ga.2009) (citing *Official Comm. of Unsecured Creditors of Cybergenics v. Chinery*, 330 F.3d 548, 568 (3d Cir.2003)). Here, however, Trustee's complaint seeks to avoid CCG's lien as a fraudulent transfer, making it unnecessary for FleetOne to bring the same claim.

██ And even if FleetOne had sought and obtained the Trustee's consent and the Court's approval to bring the fraudulent transfer action, under § 551 any recovery would revert to the benefit of the estate and unsecured creditors, not solely to FleetOne. 11 U.S.C. § 551. "Derivative standing is granted to benefit the estate as a whole, not merely to benefit the creditor bringing the claim." *In re McGuirk*, 414 B.R. at 880. Thus, if CCG's lien were avoided by Trustee (or a creditor with derivative standing), FleetOne's lien would not ascend in priority. Rather, the recovery would bring the transferred interest in property back into the estate, increasing the distribution to unsecured creditors. *Id.*; 11 11 U.S.C. § 551. FleetOne is therefore not entitled to judgment as a matter of law.

## III. CONCLUSION

Under the undisputed facts, FleetOne cannot be granted summary judgment as to equitable subrogation. Given FleetOne's knowledge of CCG's lien and FleetOne's careless structuring of the Purchase Agreement and Buy–Out Agreement, FleetOne is guilty of inexcusable neglect.

And equitably subrogating FleetOne would prejudice the equal equity of CCG, which properly acted to protect its interest in Debtor's accounts receivable.

Nor do the undisputed facts compel judgment as a matter of law as to FleetOne's other two arguments. Debtor's bankruptcy estate retains an interest in the accounts because the transaction is properly construed as a loan, not a sale. And even if the transaction were construed as a sale, FleetOne purchased Debtor's accounts receivable subject to CCG's lien. Because CCG has an interest in the accounts receivable, the bankruptcy estate also has a potential interest in the accounts receivable.

Finally, FleetOne does not have standing to avoid CCG's lien in Debtor's accounts receivables as a fraudulent transfer. And if CCG's lien is avoided, the lien will be recovered for the benefit of the bankruptcy estate, not secured parties junior to CCG. Accordingly, for the reasons stated above, it is

**ORDERED** that FleetOne's Motion for Summary Judgment is **DENIED.**

The Clerk's Office shall serve a copy of this Order on Plaintiff, counsel for Plaintiff, Defendants, respective counsel for Defendants, and the Trustee.